HENRY W. SMITH v. ROBERT B. WARDEN.

1. Where parties settle an attachment, the action continues and the lien holds good for all creditors who may apply or enter rules under the statute before the discontinuance is entered.
2. Where the debtor dies after the return day of the writ of attachment, the action is not thereby abated or discontinued, and a creditor may apply or enter his rule to be admitted, as if the defendant were alive.

The writ in this cause was issued on the 11th day of October, 1870.

By virtue of this writ of attachment, certain lands in the city of Elizabeth, Union county, were attached.

On the 12th and 28th of November, 1870, John O. Hoyt and Faulkenreek & Koenig, creditors of the defendant Warden, respectively filed affidavits, and were, by rule of court, admitted creditors under said attachment.

Warden departed this life on or about the 1st day of March, 1871, having first made, &c., his last will and testament, in and by which will and testament he appoints William K. Warden, Walter S. Pinckney, and Laurus Loomis, executors, &c.

Letters testamentary on the estate of said Robert B. Warden were granted by the surrogate of the county of Kings, on the 20th day of March, 1871, to the said William K. Warden, Walter S. Pinckney, and Laurus Loomis.

The said executors, on the 20th and 22d days of April, 1871, respectively, paid the claims of the said attaching and applying creditors, and the attachment, so far as they are concerned, was then satisfied.

After the death of said Robert B. Warden, and after the granting of the said letters testamentary—i. e., on the 20th day of April, 1871—John O. Hoyt and Frederick A. Miller, claiming to be creditors of the said Robert B. Warden, made and filed their affidavit, and caused a rule to be entered in said court admitting them as creditors under the said attachment.

April 20th, 1871, the said executors sold the said lands under and by virtue of said will, and on the 21st day of April of that year delivered the deed thereof to the purchaser.

DUTCHER & ATWATER,
*Attorneys of Hoyt and Miller, applying creditors.*

RUNYON & LEONARD,
*Attorneys for executors, and attorneys for purchaser of lands under executor's sale.*

Argued before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL, VAN SYCKEL, and SCUDDER. .

For creditors, *Dutcher & Atwater.*

For defendants, *Runyon & Leonard.*

SCUDDER, J. The question proposed in this case certified is one of peculiar construction, and the result may be doubtful in policy, because it contravenes the usual course of distribution of a decedent's estate; but it is so clearly within the express terms of the statute relating to attachments against absconding and absent debtors, that there is little room for doubt or argument. The motion is made on the part of the executors of a deceased non-resident debtor, whose real estate in this state was attached prior to his death, to discharge the attachment, because it is claimed that the executors have satisfied the plaintiff and all the creditors who applied to the court during the lifetime of the debtor, and that Hoyt and Miller, who filed their affidavit and caused a rule to be entered in the Union Circuit Court *after the death of the debtor,* have no right or lien as creditors under said attachment.

The writ against the estate of Robert B. Warden, a non-resident debtor, was regularly· issued and executed on his real property in this state.

Section seven of the act for the relief of creditors against absconding and absent debtors, enacts that the writ shall bind the property and estate of the defendant from the time of

executing the same. This proceeding under our statute is not for the benefit of the plaintiff in attachment alone, but for the plaintiff, and so many of the defendant's creditors as shall apply to the court for that purpose, or to the auditors before they shall have made their report. (§ 25.)

By section two of the act of 1854, (*Nix. Dig.* 48,*) creditors may make the affidavit of indebtedness required by the act, file the same with the clerk, and enter a rule in the minutes of the court out of which the writ issued, admitting them as creditors under the attachment. Under this section Hoyt and Miller acted, April 20th, 1871. They are, therefore, creditors entitled to the benefit of the writ, unless, at that time, something had occurred to take away their right.

This cannot be done, as was intimated in opposition to their claim, by a settlement between the debtor or his representatives, and the plaintiff and the creditors who have applied to the court to be admitted, or have entered their rules prior to that time. These parties cannot settle the attachment out of court. The property is bound, after the execution of the writ, for the equal benefit of all creditors who may apply at any time before there is a legal discontinuance. Formerly, such discontinuance could only be entered by application in open court. *Cummins* v. *Blair*, 3 *Harr.* 151.

Now, by section three of the act of 1854, (*Nix. Dig.* 48,†) by consent of applying creditors, the plaintiff may discontinue in vacation. Until, however, the rule is entered, the action continues, and the lien holds good for all creditors who may apply under the statute. *Vreeland* v. *Bruen*, 1 *Zab.* 214.

After the jurisdiction of the court has attached, and the property of the defendant has been taken into the custody of the law, there must be a discontinuance before the jurisdiction and custody cease. This act, it will be remembered, is to be construed in the most liberal manner for the benefit of creditors. (§ 60.)

The fact, therefore, that the defendant's executors had settled with the plaintiff, and the creditors who had previously

---

* *Rev.*, p. 44, § 14.        † *Rev.*, p. 49, § 40.

applied, will not entitle the executors to a rule discharging the attachment.

Neither can the motion prevail for the other reason assigned. The proceedings in attachment do not abate, and the lien created thereby is not lost by the death of the defendant. The property is taken to compel his appearance. It is a proceeding *in rem*, and if no appearance be put in, will be executed without any recognition of the defendant, until the property is applied to the payment of the defendant's creditors, who apply to the court for a share in the distribution of the proceeds. This is said to be inconsistent with the law for the administration of estates, as established in this state.

The case of *Haight* v. *Bergh*, 3 *Green* 183, and the ruling of the court therein, are not applicable to this motion. That was an attachment against executors, not begun against the debtor in his lifetime. Other cases cited in the brief of counsel upon this point have no authority in our state, and differ in the facts. They will be found, with others, in *Drake on Attachment* 433, and are based upon local statutes.

Thus it is stated in *Davenport* v. *Tilton*, 10 *Metc.* 320, to be the law in Massachusetts, that upon the appointment of an administrator, who takes the property as trustee for all the creditors, all attachments on mesne process are dissolved. Such is not the law in our state. Section forty-eight of our attachment law enacts "That if any defendant shall die after the return day of the writ of attachment, the said action shall not be thereby abated or discontinued, but the same shall be carried on to judgment, sale, transfer, distribution, and final determination, as if such death had not intervened, and the defendant had been alive." This section is conclusive in this case.

If the action does not abate, or is not discontinued by the act of law or the death of the defendant, and no rule has been entered in court to discharge the property of the defendant on settlement with the plaintiff and other creditors, then the case must stand in court as if there had been no death and no settlement. The sharp point made by the counsel for the

motion—that these creditors cannot swear that the defendant did not reside, at that time, in this state, for. he was· dead; nor could they swear that he owed them, for he was dead, and had ceased to owe anybody—suggests an incongruity, which disappears when we read the statute. It would be well taken if the action had just begun, and the plaintiff had made an affidavit of non-residence and indebtedness as a foundation for his attachment. But upon the application of a creditor to the court, or the entry of his rule on the minutes, he is only required to make and file an affidavit that the defendant in attachment.owes him a certain sum. Whether the debtor be dead or alive the indebtedness remains, and may become a charge upon the property seized under the attachment. The applying creditor is not required to know where the debtor is, nor whether he be alive or dead. This is the obvious purpose of the act, and is necessary to make effective the forty-eighth section, which carries on the action even after the ·debtor's death, to the final determination. There is no preference given to those creditors who apply before the death, and no exclusion to those who apply after. This would defeat the purpose of the act, which is to apply the property attached to the equal payment of all creditors who may apply for a share in the distribution.

The motion of the debtor's executors to discharge the attachment should be refused.

BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and VAN SYCKEL concurred.